UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America | Case No. 4:04-cr-00370-TLW |
| v. | **ORDER** |
| Travanti Roberts | |

This matter comes before the Court on Defendant Travanti Roberts' *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 245. For the reasons below, his motion is **DENIED**.

## PROCEDURAL BACKGROUND

Roberts was convicted by a jury of two counts of Hobbs Act robbery, two counts of violating 18 U.S.C. § 924(c), and one count of being a felon in possession of a firearm. ECF No. 119. The robberies at issue took place in 2004. *See generally* Presentence Investigation Report ("PSR"). On May 23, 2005, Roberts was sentenced to a total of 474 months of incarceration, followed by 5 years of supervised release. ECF No. 133. He filed a direct appeal, but the Fourth Circuit affirmed his conviction and sentence. *United States v. Roberts*, 176 F. App'x 402, 405 (4th Cir. 2006).

Roberts moved for compassionate release on May 9, 2022. ECF No. 245. In his motion, he seeks relief based on the length of the mandatory sentences he received for violating § 924(c) in relation to the mandatory minimums that would apply if he were sentenced today. *Id.* The Government opposes Roberts' motion, and Roberts has replied to this opposition. ECF Nos. 257 & 258. Accordingly, this matter

is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the Bureau of Prisons ("BOP"), so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

Roberts' motion for compassionate relief is focused solely on the fact that his sentence is the result of "stacked" § 924(c) violations. However, before the addressing his arguments in support of his motion, the Court will first review the offense conduct establishing Roberts' present incarceration to provide context to both Roberts' motion and the Court's decision.

### I.     THE OFFENSE CONDUCT

This case involves two extremely violent armed robberies in Marion and Horry County, South Carolina, committed by Roberts—a convicted felon—and several accomplices. According to the PSR, Roberts revealed his plans to rob several stores to his girlfriend, Contressa Dozier, sometime before February 22, 2004. PSR ¶ 12. After hearing the plans, Dozier retrieved her brother's firearm from his residence without his permission and gave it to Roberts. *Id.* On February 22, 2004, Dozier, along with her two cousins, Dontrial and Dommernick Brown, drove to

Roberts' home in Marion, South Carolina. *Id.* ¶ 13. The four then watched several movies, before deciding to commit their first robbery of the Kwik Fill Store in Mullins, South Carolina. *Id.* ¶ 13.

After arriving at the Kwik Fill, Dommernick Brown entered the store, walked around, and exited without making a purchase. *Id.* ¶ 14. As he exited the store, Dontrial Brown and Roberts—armed with a handgun—entered the store wearing ski masks. *Id.* Roberts pointed the gun at the clerk and demanded he open the register and hand over all the money inside. *Id.* Dontrial Brown removed the money from the register, while Roberts directed the store clerk to open the store's safe. *Id.* Upon being informed that the clerk had no means of opening the safe, the two exited the store with $154.00 and made their way back to their vehicle where Dommernick Brown and Dozier were waiting. *Id.* ¶¶ 14–15.

The four divided the money, fled the scene, and drove to Myrtle Beach, South Carolina and began cruising down Ocean Boulevard. *Id.* ¶ 15. The foursome next pulled into the Scotchman Store located on Highway 544. *Id.* ¶ 16. Dozier entered the store to purchase chips and a drink as a guise for casing the store in anticipation of committing another robbery. *Id.* She returned to the vehicle and advised the other three that only one employee was working. *Id.*

Before entering the store, Roberts and the Browns put on their ski masks, and Roberts handed Dommernick Brown the handgun used in the earlier robbery. *Id.* The three entered the store, Brown pointed the gun at the clerk, and Roberts demanded that the clerk both open the register and remove his wallet. *Id.* ¶ 17.

Dommernick Brown then removed $91.00 from the register while his brother took five cartons of Newport cigarettes. *Id.* Included within this $91.00 was a "bait bill" stamped with the Scotchman's store number and address. *Id.* The three then exited the store, removed their ski masks, and fled the scene in Dozier's vehicle. *Id.*

A passing car driven by two individuals saw the three run out of the Scotchmen and remove their masks. *Id.* ¶ 18. One of these Good Samaritans ran inside the store to check on the clerk as the other followed the escaping robbers and dialed 911 on her cellphone. *Id.* ¶ 19. Roberts realized that they were being followed and instructed Dontrial Brown to shoot at the tailing vehicle. *Id.* Dontrail retrieved the gun from his brother and successfully fired one shot at the vehicle before the gun jammed. *Id.* Dontrail then handed the firearm to Roberts to fix. *Id.*

Officers of the Horry County Police Department caught up to the getaway car, activated their blue lights, and directed Dozier to pull over. *Id.* As she slowed the car to pull over, Roberts and the Browns exited the vehicle and fled on foot. *Id.* The officers followed suit. *Id.* ¶ 20. Dozier then pulled away in the vehicle, was followed again by the Good Samaritan, pulled over, and arrested. *Id.* Dozier identified her three codefendants to the arresting officers. *Id.* ¶ 21.

The Horry County Police Department's foot pursuit did not succeed in the arrest of Roberts. *Id.* The Department next contacted all local taxicab companies regarding the suspects and requested that they contact the police if any of the suspects attempted to hail a cap. *Id.* Roberts and Dontrial Brown did, in fact, hail a cab, which dropped Dontrial off in Conway, South Carolina. *Id.* ¶ 22. Roberts

requested that the cabbie take him to Marion, South Carolina. *Id.* On the way to Marion, the cab was stopped by law enforcement, and officers noticed money between Roberts' feet on the floorboard of the cab. *Id.* The officers counted the money and located the "bait bill." *Id.* Roberts was then arrested. *Id.*

On April 27, 2004, a five-count indictment was filed against all four defendants. *Id.* ¶ 1. Roberts was named in each count. Counts 1 and 3 charged him with Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). *Id.* ¶¶ 3 & 6. Counts 2 and 4 charged him with using a firearm during and in relation to a crime of violence (*i.e.*, the Hobbs Act robberies), in violation of 18 U.S.C. § 924(c). *Id.* ¶¶ 4 & 7. Finally, Count 5 charged Roberts with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). *Id.* ¶ 8. Roberts ultimately went to trial, where he was convicted on all counts. *Id.* ¶ 9. Notably, during the trial, Dozier testified that she participated in a third armed robbery of a Marion County store with Roberts in October 2003. *Id.* ¶ 26. She stated that, during this robbery, she and Roberts entered the store with a shotgun, robbed the store clerk, and fled the scene. *Id.* She testified that, on the way out, Roberts shot at the store several times. PSR ¶ 26. The owner of the store testified that Roberts pointed the shotgun at him, exited the store, and fired four blasts at the store damaging the door, wall, and ice container. *Id.* ¶¶ 27 & 28.

Following the jury verdict, the Court sentenced Roberts to a total of 474 months incarceration, consisting of 90 months on Counts 1, 3, and 5; 84 months consecutive on Count 2; and 300 months consecutive on Count 4. ECF No. 133.

## II.   THE PARTIES' ARGUMENTS

Before addressing the merits of Roberts' motion for compassionate release, the Court will first review the arguments raised by both Roberts and the Government. *See* ECF Nos. 245 & 257.

### A.   *Roberts' Arguments in Support of His Motion*

Roberts asserts that "[e]xtraordinary and compelling reasons require the sentence imposed upon me by this court be reduced by 25 years." ECF No. 245 at 1. Specifically, Roberts contends that the "Court erred when it applied the second § 924(c)(1)(c) enhancement for a § 924(c) conviction that was part of the same prosecution" and sentenced him to a 25-year consecutive sentence for his second § 924(c) conviction. *Id.* This contention is based on Congress' recent amendments to the provisions of § 924(c) related to the "stacking" of successive § 924(c) convictions. Roberts asserts that the sentencing disparity created by these amendments constitutes "extraordinary and compelling reasons" warranting relief. *Id.* at 1–3. Roberts also requests the appointment of counsel "to assist me on this quest for sentence modification." *Id.* at 3.

### B.   *The Government's Opposition*

The Government opposes Roberts' motion on two independent grounds. ECF No. 257. First, the Government asserts that "the stacking of Roberts' 924(c) convictions does not constitute an 'extraordinary and compelling reason' for a sentence reduction." *Id.* at 5.  Second, and alternatively, the Government argues that, even if Roberts' stacked convictions constitutes an "extraordinary and

compelling reason," the 18 U.S.C. § 3553(a) factors weigh against a reduction in his sentence. *Id.* at 10.

### III.    THE COURT'S REVIEW

The Court will first take up Roberts' request for the appointment of counsel before moving on to its analysis of whether Roberts has presented "extraordinary and compelling reasons" warranting a reduction in his sentence along with whether the § 3553(a) factors favor his release.

#### A.    *Appointment of Counsel*

Roberts requests that the Court appoint him counsel in connection with this post-conviction § 3582 proceeding. Caselaw holds that "a criminal defendant has no right to counsel beyond his first appeal." *Coleman v. Thompson,* 501 U.S. 722, 756 (1991); *United States v. Coleman*, No. CR 3:01-506-JFA, 2020 WL 8258249, at *1 (D.S.C. July 30, 2020) ("As an initial matter, there is no general constitutional right to appointed counsel in post-conviction proceedings."). Although due process mandates the appointment for certain post-conviction proceedings, a motion to reduce a sentence pursuant to § 3582(c) does not fit into this category. *United States v. Legree,* 205 F.3d 724, 730 (4th Cir. 2000). The Court has discretion to appoint counsel in proceedings under § 3582(c) if the interests of justice so require. *Id.*

In review of Roberts' motion, the Court finds that he is capable—and has proven capable—of requesting compassionate release without the assistance of counsel and that he has not otherwise established that the interests of justice

require the appointment of counsel in this case. The Court gives full consideration to Roberts' position. Accordingly, the Court denies Roberts' request for the appointment of counsel.

### B.    The *"Extraordinary and Compelling Reasons"* Standard

The crux of Roberts' motion asserts that he is entitled to compassionate release because his sentence is partially based on two "stacked" 924(c) convictions. When Roberts was sentenced in 2005, federal prosecutors could bring gun charges providing for the "stacking" of multiple violations of § 924(c) for sentencing because a first and "second or subsequent" offense could be charged at the same time. Thus, a defendant, like Roberts, who robbed two stores while brandishing a firearm could be charged with two violations of § 924(c) and, if convicted at trial, face a 7-year mandatory minimum as to the first violation and a 25-year mandatory minimum as to the second violation, said sentences to run consecutively.

Years after Roberts was sentenced, in the First Step Act of 2018, Congress modified § 924(c) to provide that the 25-year mandatory minimum penalty now applies to a second or subsequent § 924(c) conviction only if the prior § 924(c) conviction already "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222. Congress provided that this relief was not retroactive. The Fourth Circuit has since held that district courts can consider the First Step Act's § 924(c) change when evaluating a defendant's motion pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). *United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020). The Fourth Circuit recently noted in *United States v. Brown* that "Congress

did not make this change to § 924(c) retroactive [but concludes] § 3582(c)(1)(A) allow for 'individual relief' based on a § 924(c) sentencing disparity 'in the most grievous cases." ____F.4th____, 2023 WL 5257673 at *7 (4th Cir. Aug. 16, 2023).[1] The Court will consider Roberts' request for relief as the Fourth Circuit provides in *McCoy* and *Brown*.

Turning to Roberts' argument that these changes constitute an "extraordinary and compelling reason" for a reduction in his sentence, the Court acknowledges the First Step Act's prospective elimination of the "stacking" of sentences under to § 924(c). As a result, if Roberts were convicted of the same five charges today, he would be subject to a lower mandatory minimum sentence on the second § 924(c) counts and a lower overall sentencing range. As noted, Congress did not make the First Step Act's § 924(c) change retroactive.[2] *See* § 403(b), 132 Stat. at 5222 ("This section, and the amendments made by this section, shall apply to any

---

[1] The Court has carefully reviewed the Fourth Circuit's recent published opinion in *United States v. Brown*, ____F.4th____, 2023 WL 5257673 at *1 (4th Cir. Aug. 16, 2023). In that case, the defendant, Kelvin Brown, was charged with eight drug and firearm charges, including two counts of possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c). *Id.* Like Roberts, Brown went to trial, and a jury convicted him on seven of eight counts—including the two § 924(c) charges. *Id.* Brown received a total sentence of approximately 57 years, 30 of which were for his two "stacked" § 924(c) convictions. *Id.* In 2020, Brown moved for compassionate release arguing, in part, that the First Step Act's changes to the "stacking" of § 924(c) convictions constituted an "extraordinary and compelling reason" in favor of relief because of the disparity in the sentence he received and the one he would receive today. *Id.* at * 2. The district court denied the motion, concluding that Brown could not establish "extraordinary and compelling reasons" and because the 18 U.S.C. § 3553(a) sentencing factors weighed against granting Brown relief. *Id.* On appeal, the Fourth Circuit reversed the district court, vacated its order, and remanded the case with instructions to reduce Brown's sentence by 20 years. *Id.* In doing so, the Fourth Circuit majority concluded that, because of the First Step Act's changes to § 924(c), the disparity between the sentence Brown received and the one he would receive today constituted an "extraordinary and compelling reasons." *Id.* After concluding that Brown established "extraordinary and compelling reasons," the *Brown* majority proceeded to independently reweigh the § 3553(a) sentencing factors, finding that they supported a reduction in Brown's sentence. *Id.* Specifically, the majority noted that Brown had made rehabilitative efforts, received only one disciplinary infraction, and was serving a sentence based on *nonviolent* conduct. *Id.*

[2] Nevertheless, the Court recognizes that this change must still be considered when evaluating a motion for compassionate release. *See McCoy*, 981 F.3d at 284.

offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment.*" (emphasis added)). Although the First Step Act's change to § 924(c) sentences "can constitute an extraordinary and compelling reason for relief," the Fourth Circuit recognized that "not *all* defendants convicted under § 924(c) should receive new sentences." *McCoy*, 981 F.3d at 285, 287 (emphasis added). Deciding whether a particular defendant's sentence should be reduced is ultimately an individualized, case-by-case inquiry. *See id.* at 287–88. In light of *McCoy* and *Brown*, the Court concludes Roberts' position is "relevant to . . . the 'extraordinary and compelling reasons' inquiry [.]" *Brown*, 2023 WL 5257673 at *7. However, the question of a sentence reduction here is based—and focused on—a review of the criminal conduct committed, Roberts' criminal history, relevant § 3582(c) issues raised in the briefing, applicable caselaw, the 18 U.S.C. § 3553(a) sentencing factors, and changes in the law.

### C.   *The § 3553(a) Factors*

Even where, as here, a district court finds that a defendant has established "extraordinary and compelling reasons," the district court "is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (cleaned up); *see also United States v. Hargrove*, 30 F.4th

189, 195 (4th Cir. 2022) ( noting that, even if a prisoner establishes "extraordinary and compelling circumstances," a district court is "not required to grant the defendant's motion for a sentence reduction."). Here, the Court concludes that, based on both Roberts' repeated violent conduct, his criminal history, and his continued disciplinary infractions, the § 3553(a) factors weigh against granting his request for relief.

As part of the § 3553(a) factors, the Court reiterates the facts surrounding Roberts' extreme offense conduct, which is thoroughly detailed above. During his February 22, 2004 crime spree, Roberts actively disregarded the safety of his victims and the public. His conduct was significant and violent. Roberts was armed with a firearm when committing the offenses that led to his federal charges for the instant offense conduct. This conduct involved Roberts, as well as his codefendants, pointing—and *firing*—a gun at unarmed individuals. When considering these violent robberies and the risk to the victims—along with the additional violent robbery revealed by Dozier at trial—the Court concludes that the lengthy sentence Roberts received is amply justified. *Contra Brown*, 2023 WL 5257673 at *7 ("While we do not make light of the serious conduct for which Brown was convicted, we cannot ignore the extraordinary fact that Brown . . . was not charged with causing any physical violence or injury"). Roberts clearly committed violent crime and threatened physical injury.

To reiterate: the Court has described Roberts conduct that led to his federal charges and convictions earlier in this order. *See supra* I. Again, that conduct is set

forth in Paragraphs 10 through 25 of the PSR. The robberies were violent. Guns were used. Ski masks hid the identity of the defendants. Guns were pointed at the store clerks. Victims were put in fear of significant physical harm—or even death. In the second robbery, Roberts told a codefendant to shoot at an individual who followed them after they fled. The codefendant did so and *fired* at the individual. When the police gave chase, Roberts fled to avoid capture. Regarding the uncharged robbery outlined in Paragraphs 26 through 28 of the PSR, Roberts was armed with a shotgun. He pointed the shotgun at the owner of the convenience store. When leaving the store after the robbery, "Roberts *shot* at the store several times," causing damage to the property. PSR ¶¶ 26–27. (emphasis added). The store clerk apparently was in the store when the shots were recklessly fired at Roberts. *Id.* ¶ 28. After a review of the aggravated, violent offense conduct involved in the robberies, the Court concludes that "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), weigh against release.

As to "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), the record reflects Roberts was young at the time of his offenses—20 years old. Yet he had already accumulated a significant criminal record. At the age of 15, he had juvenile adjudications for financial transaction card theft, burglary second degree and petty larceny. PSR ¶ 68. At the age of 17, he was convicted of both burglary of a residence, second degree, and grand larceny. *Id.* ¶ 69. To commit these crimes, Roberts unlawfully entered an individual's residence and stole *six firearms* and a four-wheeler. *Id.* For these convictions, Roberts received a South

Carolina Youthful Offender Act sentence of incarceration. *Id.* He was paroled after being incarcerated for nearly two years. *Id.* Yet, he committed the instant offense conduct while on parole for these offenses. *Id.* Notably, his prior convictions and sentence did not deter him from committing more, *escalating* violent offenses while armed. His continued commission of more violent crime after his prior incarceration leads to the conclusion that he would be a danger to the public if his sentence was reduced. This prior record of significant criminal conduct, previous interaction with the criminal court system, and disregard for the law weighs heavily against a reduction of Roberts' sentence here.

In reweighing the § 3553(a) factors in *Brown*, the majority carefully reviewed Brown's limited prison disciplinary record and found that it weighed in favor of a reduction in his sentence. *Brown*, 2023 WL 5257673 at *9 ("Additionally, Brown's claim that he incurred only one disciplinary infraction throughout his incarceration—a fact the district court also failed to mention—casts further doubt on the court's concern for the safety of the community."). That is not the case here. A review of Roberts' prison disciplinary records also reveals a continuing, distinct lack of respect for the law, which makes him a continued risk to the safety of the public. As noted by the Government, Roberts' disciplinary infractions at the BOP include two instances of possessing a dangerous weapon, four instances of engaging in sexual acts, possessing drug/alcohol, possessing an unauthorized item, gambling, two instances of refusing to obey an order, six instances of refusing work/program assignment, and on instance of being insolent to a staff member. ECF No. 257 at 10.

This conduct also counsels against a reduction in his sentence or his release.

The Court also concludes that §§ 3553(a)(2)(A)–(C) weigh heavily against release for similar reasons. As thoroughly discussed above, Roberts' conduct was egregious and violent. The sentence imposed was—and is—necessary to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. Considering Roberts' violent offense conduct, his prior criminal record, and his continued disregard for the law before and after his incarceration, the Court concludes that Roberts' current sentence is sufficient, but not greater than necessary, to satisfy the factors in § 3553(a)(2).

The Court next turns to §§ 3553(a)(3)–(6)—the kinds of sentences available, the guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. As noted, the First Step Act's elimination of § 924(c) "stacking" would subject Roberts to a lower mandatory minimum and corresponding guidelines range if he were convicted of the same offenses today. To illustrate this the Court will compare Roberts' guidelines range and mandatory minimum when sentenced to those he would face today.

When Roberts was sentenced, he had 7 criminal history points, which placed him in a criminal history category of IV. PSR ¶¶ 70–73. Roberts' guidelines imprisonment range for the non-924(c) counts (1, 3 & 5) was 77 to 97 months. *Id.* ¶ 88. Regarding his § 924(c) convictions (counts 2 & 4), Roberts faced a statutory minimum term of imprisonment of 7 years as to the first conviction and 25 years as

to the second conviction, to run consecutive to both each other and any other sentence imposed on the non-924(c) counts. *Id.* ¶ 87. His mandatory minimum on the § 924(c) convictions was 32 years.

If sentenced today, Roberts would have 6 criminal history points which would place him in a criminal history category of III. He would thus have a slightly lower guidelines range for his non-924(c) counts of 63 to 79 months imprisonment. For his § 924(c) convictions, he would face a *minimum* 7-year sentence on each charge with a *maximum* of Life based on the use of firearms during in each robbery. His mandatory minimum sentence would be less, but he could be sentenced to Life on each of the § 924(c) convictions. Again, 14 years is the *minimum* guidelines sentence Roberts would face today on the gun charges. But he could be sentenced to a *maximum* of Life on *each* § 924(c) count. Thus, if sentenced today, Roberts could still receive the original 474-month sentence imposed.[3]

The Court concludes that, while Roberts would be facing a lower mandatory minimum sentence if he were sentenced today, the facts of this case would not warrant a sentence at the mandatory minimum. As noted, the Fourth Circuit indicated that district courts should not grant sentence reductions based solely on the First Step Act's change to § 924(c) but should instead "conduct individualized inquires" and consider factors specific to the defendant. *McCoy*, 981 F.3d at 288.

---

[3] The Court notes that in the recent *Brown* case, the Fourth Circuit, in reversing a denial of a § 3582 motion, reduced what it determined to be a "disparate sentence" which was based on the "staking" of two § 924(c) convictions to 447 months. *Brown*, 2023 WL 5257673 at *9. Compare this sentence to Roberts' present 474-month sentence, which is also based, in part, on the stacking of two § 924(c) counts. However, unlike the defendant in *Brown*, Roberts' present convictions arose out of the violent conduct outlined herein—not nonviolent drug activity. Thus, when comparing a drug case to a violent crime case, there is a much more significant basis to deny a reduction in a defendant's federal sentence.

The Court has followed that guidance and has based its decision on the individualized considerations outlined in detail above, after having fully considered each of Roberts' arguments. Roberts committed three violent robberies, all of which involved the use of a firearm. Moreover, Roberts' prior encounters with the criminal justice system, which resulted in his incarceration, did not deter him from committing further, *escalating*, violent criminal conduct. The Court's § 3553(a) analysis leads it to conclude that it is appropriate for Roberts to serve the remainder of the sentence imposed because it is sufficient, but not greater than necessary, to satisfy the applicable sentencing factors.

<u>CONCLUSION</u>

The Court finds that Roberts' motion should be denied based on an analysis of the instant offense conduct, Roberts' prior record, the relevant § 3582(c) issues raised, applicable caselaw, and the balancing of the 3553(a) factors. Roberts would pose a significant threat and risk of harm to the public if released. Accordingly, it is the judgment of the Court that Roberts' motion for compassionate release, ECF No. 245, is **DENIED**.

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

August 31, 2023
Columbia, South Carolina